UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANASTASIA CHRISTINA WLADYSIAK,          Case No. 11-14494

                Plaintiff,                    Paul D. Borman
v.                                                    United States District Judge

COMMISSIONER OF SOCIAL SECURITY,      Michael Hluchaniuk
                              United States Magistrate Judge

                Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 14)**

## I.  PROCEDURAL HISTORY

    A.  <u>Proceedings in this Court</u>

On October 12, 2011, plaintiff filed the instant suit seeking judicial review

of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Paul D. Borman referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claim for a period of

disability and disability insurance benefits.  (Dkt. 2).  This matter is currently

before the Court on cross-motions for summary judgment.  (Dkt. 9, 14).

    B.  <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on August 9, 2008, alleging that she became

unable to work on January 1, 2006. (Dkt. 6-5, Pg ID 147-153). The claim was initially disapproved by the Commissioner on September 29, 2008. (Dkt. 6-4, Pg ID 87-97). Plaintiff requested a hearing and on July 13, 2010, plaintiff appeared with counsel before Administrative Law Judge (ALJ) John J. Rabaut, who considered the case de novo. In a decision dated July 27, 2010, the ALJ found that plaintiff was not disabled. (Dkt. 6-2, Pg ID 39-53). Plaintiff requested a review of this decision on August 19, 2010. (Dkt. 6-2, Pg ID 38). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits (Dkt. 6-2, Pg ID 31), the Appeals Council, on September 9, 2011, denied plaintiff's request for review. (Dkt. 6-2, Pg ID 28-30); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 41 years of age at the time of the most recent administrative hearing. (Dkt. 6-2, Pg ID 51, 61). Plaintiff's relevant work history included approximately 10 years as a clerical aide and a medical assistant. (Dkt. 6-6, Pg ID

180).  In denying plaintiff's claims, defendant Commissioner considered fibromyalgia, headaches impairment, chronic pain, and migraines as possible bases of disability.  (Dkt. 6-6, Pg ID 171).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of January 1, 2006 through her date of last insured of December 31, 2007.  (Dkt. 6-2, Pg ID 44).  At step two, the ALJ found that plaintiff's degenerative disc disease of the lumbar spine, herniated nucleus pulposus, migraine headaches, and major depressive disorder were "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 6-2, Pg ID 44-45).  At step four, the ALJ found that plaintiff could not perform her previous work as a clerical aide and a medical assistant.  (Dkt. 6-2, Pg ID 51).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  *Id*.

B.    Plaintiff's Claims of Error

Plaintiff first claims that the ALJ failed to follow the treating physician rule. The ALJ stated that the opinions from treating neurologist Dr. Eilender were given "limited weight" because they were "inconsistent with his examination records."

(Tr. 23).  And, the ALJ gave "limited weight" to the opinions from treating rheumatologist Dr. Silverman.  (Tr. 24).  He found "nothing in Dr. Silverman's records [to] indicate that the claimant would be limited from sedentary work."  The ALJ also gave "limited weight" to the opinions from treating physician Dr. Kizy because they were "inconsistent with other evidence on the records such as the claimant's improvement after starting Botox."  *Id*.  However, according to plaintiff, the ALJ failed to cite to any medical opinions that supported the RFC.  Plaintiff also contends that the ALJ's analysis of the opinions from the treating sources was markedly deficient.  He ambiguously finds the opinions from all treating physicians inconsistent with "other records," but fails to specifically point out what the inconsistencies are.  According to plaintiff, the record makes clear that the opinions from the treating sources should have been afforded deferential weight.  Treating neurologist Dr. Eilender reported that his opinion was based on appropriate medical evidence of muscle spasms, pain, and fatigue.  (Tr. 687-688).  The treating rheumatologist Dr. Silverman based his opinions on evidence of widespread pain with tender points in the back, arms, and legs, and fatigue.  (Tr. 583-584). Treating primary care physician, Dr. Kizy, based his opinions on similar findings of multiple trigger points, particularly in the neck and shoulders, as well as the findings reported by Drs. Eilender and Silverman.  (Tr. 600-601).  Again, plaintiff points out that the ALJ fails to cite to any medical opinions that contradict

Report and Recommendation
Cross-Motions for Summary Judgment
*Wladysiak v. Comm'r*; Case No. 11-14494

the opinions and findings from the treating sources because there are none.

Therefore, plaintiff contends that the ALJ should have given controlling weight to

the opinions from the treating sources.

Plaintiff next argues that even if the ALJ was not required to give controlling

weight to the opinions from the treating medical sources, he still failed to give any

specific reasons for finding the opinions deficient and failed to weigh the opinions

under the factors in 20 C.F.R. § 404.1527(d)(2)-(6).  According to plaintiff, this

failure was highly prejudicial since these factors all weigh in favor of crediting the

opinions from the treating physicians.  In particular, Dr. Eilender examined and

treated plaintiff on a regular basis over a period of four years; he was familiar with

her history and treatment with the other sources of record; Dr. Eilender's opinions

were based on appropriate medical findings and were well-supported; his opinions

are consistent with every other medical opinion of record; and, he is board certified

in neurology.  Dr. Silverman, a board-certified rheumatologist, also treated plaintiff

on a regular basis over a period of almost four years; he was well aware of

plaintiff's treatment history; and, he relied on similar appropriate medical findings.

Finally, Dr. Kizy, a board certified internist, based his opinions on appropriate

medical findings that mirrored those from the treating specialists and he treated

plaintiff on a regular basis for almost 15 years. There are no medical opinions of

record or other persuasive evidence that supports the RFC finding by the ALJ.

And, plaintiff contends that the ALJ, as a layperson, was not qualified to determine plaintiff's limitations without some evidence supporting his conclusions.  This is particularly true here, where multiple treating physicians, including two specialists, reviewed the exact same medical findings as the ALJ and reached different conclusions.

Plaintiff also argues that the ALJ failed to properly evaluate her credibility. In this case, the ALJ conceded that medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (Tr. 25).  In support of this conclusion, the ALJ noted that plaintiff had migraines for many years prior to the time she stopped working and she was able to maintain work during this earlier period.  He also noted that plaintiff was able to engage in activities of daily living, including showering, fixing her hair, doing the laundry, participating in church activities until 2009, helping her children with homework, light housekeeping, paying bills, and reading. *Id.*  According to plaintiff, the ALJ's findings were insufficient to establish that she was not credible because he applied the incorrect legal standard in weighing her credibility.  The Regulations at 20 C.F.R. § 404.1529(c)(4) instruct the ALJ to evaluate the consistency of a claimant's statements not against

the adjudicators own RFC assessment, as the ALJ did here, but rather with the evidence of record. To the extent the ALJ did purportedly consider the record prior to making his RFC determination, the findings fail to support a finding that plaintiff is not credible. Although plaintiff was diagnosed with migraines prior to her onset and was able to work with this condition, she reported that her headaches worsened around the time she stopped working (Tr. 397) and her fibromyalgia symptoms began only shortly prior to her onset. Second, plaintiff says that her capacity to engage in some limited activities of daily living in her own home and on her own schedule, fails to show that she can work a full-time job on a sustained basis. As observed by the Sixth Circuit in *Rogers v. Commissioner of SSA*, 486 F.3d 234, 248-149 (6th Cir. 2007), where the ALJ found it significant that the claimant could drive, clean her apartment, care for two dogs, do laundry, read, watch the news, and do stretching exercises, these somewhat minimal daily functions are not comparable to typical work activities. *See also Grooms v. Commissioner of Social Security*, 2010 WL 1286688 *4 (E.D. Mich. 2010) (Hluchaniuk, M.J.) ("there is a profound difference between an individual with a sedentary lifestyle and one having a sedentary RFC…Just because plaintiff can perform certain limited daily activities, at her own pace, does not mean that she can perform these activities at a level that would satisfy an employer"). Plaintiff points to her extensive testimony regarding her symptoms, limitations, limited

daily activities, and lack of significant improvement with treatment and asserts that

her testimony was entirely consistent with the medical evidence of record.

According to plaintiff, the ALJ's failure to adequately consider plaintiff's

testimony on these subjects under the factors in SSR 96-7p or give any other

cogent reason for finding her not credible was reversible error.

     C.    <u>Commissioner's Motion for Summary Judgment</u>

     According to the Commissioner, the ALJ appropriately evaluated the

opinions of Drs. Eilender, Silverman, and Kizy.  The Commissioner first points out

that the ALJ need not give weight to an opinion, such as those given by Drs.

Eilender, Silverman, and Kizy, that state that plaintiff is "disabled" or "unable to

work,"  (Tr. 440, 594, 599, 696), which is an issue reserved to the Commissioner.

Second, the ALJ need not accept a physician's opinion that is inconsistent with his

own contemporaneous treatment notes. 20 C.F.R. § 404.1527(c)(3) ("The more a

medical source presents relevant evidence to support an opinion, . . ., the more

weight we will give that opinion.").  Here, according to the Commissioner, the

treatment notes dated between plaintiff's alleged disability onset date to her date

last insured do not support the conclusion that plaintiff had functional limitations

that rendered her disabled during that period.

     Specifically, the Commissioner points to Dr. Eilender's treatment notes,

which show that plaintiff's impairments, though severe, did not cause functional

limitations that were debilitating as she now claims.  For example, plaintiff told

Dr. Eilender that her headaches improved with medication.  (Tr. 299, 307).  In fact,

plaintiff reported a 90-95% improvement in her headaches with Botox injections

and Topamax, and she admitted that the fibromyalgia in her neck was

"significantly better."  (Tr. 295).  In contrast, when plaintiff stopped her

medication regimen, she experienced intermittent numbness and breakthrough

migraines.  (Tr. 308).  According to the Commissioner, it is well settled that a

condition that can be remedied through medication or treatment is not disabling

under the Act.  *See Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922,

927 (6th Cir. 1987); *Conner v. Astrue*, 2010 WL 455261, at *19 (M.D. Tenn.

2010).  Additionally, motor, sensory and neurological examinations conducted by

Dr. Eilender were normal.  (Tr. 299-301, 307-08).  Dr. Eilender's notes also show

that plaintiff had a good attention span and no difficulties with concentration.  (Tr.

299). The Commissioner contends that this evidence is inconsistent with Dr.

Eilender's statements concerning plaintiff's alleged inability to work.

The Commissioner also argues that Dr. Silverman's opinion on plaintiff's

alleged inability to work is not supported by his treatment notes.  For example, like

Dr. Eilender, Dr. Silverman also noted that plaintiff's symptoms improved with

medication.  (Tr. 343, 345, 384).  At the beginning of the treatment relationship in

August 2006, Dr. Silverman reported that plaintiff had multiple trigger points, but

in April and June of 2007, plaintiff had only 2 trigger points. (Tr. 339, 343, 349). Motor and sensory examinations were routinely normal. (Tr. 331-32, 338, 341, 343, 346). Similarly, Dr. Kizy's contemporaneous treatment notes show that plaintiff had normal neurological exams, normal strength and reflexes, and negative straight leg raise test. (Tr. 383, 393-94). Dr. Kizy's notes reference plaintiff's subjective complaints of pain, but medical records that merely document a claimant's statements about subjective complaints are insufficient to establish an impairment affecting her ability to work. 20 C.F.R. § 404.1528.

Next, the Commissioner maintains that the doctors' opinions are inconsistent with the record as a whole, which is devoid of any evidence of significant, debilitating limitations pertaining to any physical or mental impairment during the relevant two year period. 20 C.F.R. § 404.1527(c)(4). To the contrary, objective diagnostic tests (e.g., an EMG, MRIs, x-rays, and a bone scan) showed no significant abnormalities (Tr. 296-96, 352, 355-58, 482); plaintiff had normal strength and reflexes, a full range of motion, and no neurological deficits (Tr. 484); her symptoms improved with medication and physical therapy (Tr. 217, 219- 20, 483-84); and she traveled and was independent in her daily activities. (Tr. 393, 483). Given the evidence of record, the unsupported opinions of Drs. Eilender, Silverman, and Kizy were not entitled to controlling weight.

The Commissioner also contends that the doctors' questionnaire responses

are of little relevance here since they post-date plaintiff's date last insured and lack objective evidence showing that they relate back to Plaintiff's limitations during the relevant period.  *See Strong v. Soc. Sec. Admin.*, 88 Fed.Appx. 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value.") (citation omitted).  Plaintiff's counsel tried to cure this deficiency by asking each doctor "what is the earliest date that the description of symptoms and limitations in this questionnaire applies."  Dr. Silverman responded "8/06," Dr. Kizy responded "11/14/05," and Dr. Eilender's notation is illegible.  (Tr. 589, 606, 693).  According to the Commissioner, none of the doctors provided a substantive basis for these conclusions, nor do they identify the necessary medical signs and clinical findings to support their opinions on plaintiff's alleged functional limitations prior to her date last insured.

Nevertheless, to the extent these treating physicians' opinions on plaintiff's functional limitations were supported by the record, the ALJ did give them some weight in determining that plaintiff could perform a range of unskilled, sedentary work.  (Tr. 21).  For example, Drs. Silverman and Eilender indicated that plaintiff could perform low stress work.  (Tr. 588, 692), which the ALJ included in plaintiff's RFC.  (Tr. 21).  The ALJ also took into account the doctors' opinions that plaintiff should avoid exposure to temperature extremes and vibrations, and that she could do various postural limitations (e.g., kneeling, stooping, etc.) and

manipulative limitations (e.g., reaching, and handling, etc.) only occasionally (Tr. 21, 586-87, 589, 603-04, 606, 690-93). Further, the ALJ limited plaintiff to only sedentary work, which is consistent with Dr. Silverman's and Dr. Eilender's opinions that plaintiff could occasionally lift up to 10 pounds (Tr. 586, 690), and Dr. Kizy's opinion that Plaintiff could lift and carry 5-10 pounds occasionally and less than 10 pounds frequently. (Tr. 603). Notably, the ALJ also included in the RFC a sit/stand option, thus taking into account the doctors' opinions that plaintiff needed to move around on a regular basis. (Tr. 21, 585, 602, 689). Finally, the ALJ's RFC findings include a limitation that specifically addressed plaintiff's neck limitations, as reported in the doctors' treatment notes. (Tr. 21). Indeed, the ALJ expressly provided that plaintiff could not do work that involved constant rotation, flexion, or extension of the neck, or work that involved more than occasional overhead reaching and handling. (Tr. 21, 53).

    The Commissioner also contends that plaintiff's treatment history demonstrates that her impairments were not as debilitating as she claims. Plaintiff testified that her migraines were the main reason she could not work during the relevant period. (Tr. 47). She claims that she had several migraines a month that would take a day to resolve, and then she needed another day to recover. (Tr. 47). According to the Commissioner, there is no objective evidence in her physicians' treatment notes to support this testimony. To the contrary, as set forth above, the

objective medical evidence shows that plaintiff's migraines improved with medication and Botox injections – a point that plaintiff concedes. (Tr. 41). Also, as the ALJ noted, plaintiff has experienced migraines since her late teens, yet she was able to work for many years with the impairment. (Tr. 25, 40). Further, by February 2007, plaintiff admitted that her headaches had improved by 95% with Botox and Topamax, her fibromyalgia was "significantly better," and that "this is the best she has felt in years." (Tr. 295).

Additionally, the Commissioner contends that the ALJ correctly concluded that plaintiff's self-reported activities of daily living were inconsistent with an individual experiencing totally debilitating symptoms. The record shows that during the relevant 2-year period, plaintiff lived in a two-story house with her husband, two young children (who were ten and eight at the time of the hearing), and a dog. (Tr. 38-39, 158). Plaintiff reported no difficulties in independently caring for her personal needs, she prepared meals, did household chores (she stated that her 10 year old son sometimes helped her with laundry), shopped, traveled, and socialized with others. (Tr. 43, 160-63, 393). She cared for and played with her children, drove them to school and picked them up everyday, and assisted them with their homework. (Tr. 42-43, 160). She went to church and to her children's school on a regular basis, and served on a church committee until the end of 2009. (Tr. 43, 163). Plaintiff was able to handle her finances. (Tr. 162).

She needed no special reminders to take care of her personal needs and grooming or take her medication.  (Tr. 160-61).  Plaintiff's hobbies included reading and using the internet.  (Tr. 44, 163).  She needed no reminders to go places, and she had no difficulties getting along with family, friends, neighbors, authority figures, or others.  (Tr. 163-65).  She could walk one-half mile before stopping to rest and did not require an assistive device to ambulate.  (Tr. 164-65). She could pay attention for 1 to 1.25 hours; her ability to follow written and spoken instructions was "great"; and she reported no significant difficulties with handling changes in her routine.  (Tr. 165).  According to the Commissioner, contrary to plaintiff's assertion, her extensive activities, as documented in the record, show that she could do more than just "engage in some limited activities ... in her own home and on her own schedule."  Plaintiff's activities were not intermittent; rather, she engaged in them on a regular and continuous basis. Consistent with the regulations, the ALJ considered plaintiff's daily activities in the credibility analysis in light of all of the medical evidence of record, and properly explained how they related to his overall findings.  (Tr. 22-23, 25).  Indeed, the ability to engage in these extensive activities contradicts plaintiff's claim that her alleged debilitating functional limitations precluded her from performing the minimal demands of unskilled, sedentary work. (Tr. 25).  20 C.F.R. § 404.1529(c)(3)(i).

      D.    <u>Plaintiff's Reply</u>

Plaintiff argues that the findings from Dr. Eilender's treatment notes cited by the Commissioner – 90-95% improvement in her headaches with Botox injections and Topamax, that her fibromyalgia pain was significantly better, failure to find any motor, sensory, or neurological deficits on examination – do not contradict Dr. Eilender's opinions. According to plaintiff, although she had initial relief of her pain with Botox injections (Tr. 295), her headaches returned and she had breakthrough headaches and worsening fibromyalgia. (Tr. 686). Second, plaintiff points out that is it unsurprising that she did not have motor, sensory, or neurological deficits. It is not surprising since her primary impairments, fibromyalgia and migraines, are not documented by such findings. *See Rogers v. Commissioner of Social Security*, 486 F.3d 234, 243 n. 3 (6th Cir. 2007) (noting that fibromyalgia cannot be shown through testing and the only relevant findings on examination are trigger or tender points); *Rutherford v. Barnhart*, 2008 WL 2018042 *21 (M.D. Tenn. 2008) (migraine headaches are not "easily traced to an objective medical condition"); *Biller v. Astrue*, 2010 WL 5481746 *8 n. 9 (N.D. Ohio 2010) ("it is unclear whether there could ever be objective clinical evidence of a claimant's alleged migraine headache pain"); *Longerman v. Astrue*, 2011 WL 5190319 *8 (N.D. Ill. 2011) ("Migraines 'do not stem from a physical or chemical abnormality that can be detected by imaging techniques, laboratory tests, or physical examination.'") quoting *Stebbins v. Barnhart*, 2003 WL 23200371, at *10

(W.D. Wis. 2003).

Plaintiff similarly urges the Court to reject the Commissioner's argument that the opinions from Drs. Silverman and Kizy were contradicted by the records that showed improvement with trigger point injections and a lack of motor and sensory abnormalities or abnormal diagnostic testing.  Again, plaintiff points out that there is no evidence that her relief from treatment was sustained.  And, all the records cited by defendant are within a brief period of time.  In addition, plaintiff's impairments cannot be documented by motor or sensory abnormalities, or by objective imaging or other testing.  Therefore, plaintiff' contends that defendant's argument has no merit.

Plaintiff also contends that the Court should reject the Commissioner's argument that the opinions from Drs. Eilender, Silverman, and Kizy have little relevance to plaintiff's functional capacity during the period at issue since they post date the date last insured.  As the Commissioner notes, the opinions were retrospective in nature and neither the ALJ nor the Commissioner cite to any evidence showing that plaintiff's condition deteriorated between the time that the opinions were rendered and the date last insured that would call into question whether her conditions had worsened after the date last insured.  Plaintiff also points out that valid opinions from treating sources cannot be discounted merely because they are retrospective in nature.  *See e.g. Toscano v. Commissioner of*

*Social Security*, 2009 WL 5217657 *4 (E.D. Mich. 2009).

Plaintiff also points out that the Commissioner fails to cite to any medical evidence that supports the ALJ's conclusion that plaintiff could perform the sitting and standing requirements of sedentary work – because there is none.  Rather, the ALJ's findings on these critical exertional capabilities was based on nothing more than his impermissible lay assessment of the raw medical data.  This was particularly inappropriate, according to plaintiff, because the ALJ failed to recognize that plaintiff's impairments cannot be documented by the types of medical findings that he believed were necessary.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

Report and Recommendation
Cross-Motions for Summary Judgment
*Wladysiak v. Comm'r*; Case No. 11-14494

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

     If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

     The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

Report and Recommendation
Cross-Motions for Summary Judgment
*Wladysiak v. Comm'r*; Case No. 11-14494

evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.    Governing Law

    The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed

> to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    <u>Analysis and Conclusions</u>

1.    Treating physician opinions/fibromyalgia

The undersigned agrees with plaintiff that the ALJ failed to give sufficiently good reasons for not giving controlling weight to plaintiff's treating physicians. As both parties acknowledge, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir.2007).  "Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion."  *Id*. at 406, citing § 404.1527(d)(2).  Indeed, SSR 82-62 requires that "[t]he explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies. Reasonable inferences may be drawn, but presumptions, speculations and suppositions must

not be used." In this case, the ALJ seems to have cherry-picked a few positive statements from years of treating records with multiple physicians to conclude that their opinions should be almost entirely rejected. The undersigned agrees with plaintiff that there is no evidence that single mention of her significant "improvement" was sustained over any period of time. Indeed, the opinions of multiple long-term treating physicians strongly suggest otherwise.

Moreover, if the ALJ determined that plaintiff's treating physicians' opinions should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009). This was not done either. And, even if their opinions were not entitled to controlling weight, they were entitled to deference. 20 C.F.R. § 404.1527(d)(2)(i). As explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927.

> In many cases, a treating source's medical opinion will be
> entitled to the greatest weight and should be adopted,
> even if it does not meet the test for controlling weight.

The ALJ failed to adequately address why the treating opinions should not be given controlling weight or even deference, as required by the regulations. 20 C.F.R. § 404.1527(d)(2). In addition, the undersigned finds the ALJ's analysis of purported "inconsistencies" between their opinions and their office notes to be wholly unsatisfactory, as discussed above. The undersigned does not believe, contrary to the Commissioner's argument, that merely because the opinions are "retrospective", they are not entitled to the same deference. This is not a case where a treating physician who did not treat the claimant during the time period in question is offering such a retrospective opinion. *See e.g.*, *Lancaster v. Astrue*, 2009 WL 1851407, at *11 (M.D. Tenn. 2009) ("[A] retrospective diagnosis relating back to the insured period may be considered proof of disability only if it is corroborated by evidence contemporaneous with the eligible period."); *Clendening v. Astrue*, 2011 WL 1130448, *5 (N.D. Ohio 2011) (Retrospective opinions not entitled to deference where treating physician had no first-hand knowledge of the claimant's condition prior to the last date insured.). Thus, the undersigned concludes that a remand is necessary so the ALJ may re-evaluate the treating physician opinions and supporting treatment evidence.

The undersigned is also perplexed as to why the ALJ discussed plaintiff's

fibromyalgia condition, but did not conclude that this was a "severe" impairment.

This was, perhaps, an oversight.  More importantly, the ALJ does not appear to

have followed the Sixth Circuit's standards for evaluating fibromyalgia, which

further compounds the ALJ's erroneous treatment of the treating physicians'

opinions.  The Court of Appeals for the Sixth Circuit has recognized the difficulty

that fibromyalgia presents for disability determination:

> In stark contrast to the unremitting pain of which
> [fibromyalgia] patients complain, physical examinations
> will usually yield normal results-a full range of motion,
> no joint swelling, as well as normal muscle strength and
> neurological reactions. There are no objective tests which
> can conclusively confirm the disease; rather it is a
> process of diagnosis by exclusion and testing of certain
> 'focal tender points' on the body for acute tenderness
> which is characteristic in [fibromyalgia] patients.

*Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988).

"*As it is difficult to pin down objective medical evidence to support a diagnosis of*

*fibromyalgia*, it is even more difficult to produce objective medical evidence that

shows the degree to which fibromyalgia limits the functioning of its victim."

*Laxton v. Astrue*, 2010 WL 925791, *6 (E.D. Tenn. 2010) (emphasis added).  As

the medical literature and case law recognize:

> According to a recent Merck Manual entry, fibromyalgia
> is "a common nonarticular disorder of unknown cause
> characterized by generalized aching (sometimes severe),
> widespread tenderness of muscles, areas around tendon
> insertions, and adjacent soft tissues, as well as muscle

> stiffness, fatigue and poor sleep." A diagnosis is based on clinical findings of generalized pain and tenderness, especially if disproportionate to physical findings; negative laboratory results despite widespread symptoms; and fatigue as a predominant symptom. Tender or "trigger" points in the cervical, thoracic, and lumbar spinal areas, as well as the extremities, are palpated. Merck's notes that the "classic" diagnosis requires 11 of 18 of the specified points to produce pain upon palpation, but that "most experts no longer require a specific number of tender points to make the diagnosis as originally proposed (more than 11 of 18). Patients with only some of the specified features may still have fibromyalgia."

*Lawson v. Astrue*, 695 F.Supp.2d 729, 735 (S.D. Ohio 2010), quoting Merck Manual Online Medical Library, http://www.merck.com.  The Sixth Circuit and the Social Security Administration have also recognized that it makes little sense to rely on a lack of objective medical evidence when addressing both the diagnosis and the treatment of fibromyalgia.  *See e.g.*, *Rogers v. Comm'r*, 486 F.3d 234, 243-44 (6th Cir. 2007) ("[I]n light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant ..."); *Preston v. Sec'y of Health & Human Serv.*, 854 F.2d 815, 820 (6th Cir. 1988) (noting that fibromyalgia can be a severe disabling impairment, and objective tests are of little help in determining its existence or its severity); 64 FR 32410, 32411 (June 17, 1999) ("Fibromyalgia is a 'nonarticular' rheumatic disease, and objective impairment of musculoskeletal

function, including limitation of motion of the joints, is not present, in contrast to the usual findings in 'articular' rheumatic diseases.  Joint examinations in fibromyalgia are necessary only to exclude other rheumatic diseases because physical signs other than tender points at specific locations are lacking.  The pain of fibromyalgia is not joint pain, but a deep aching, or sometimes burning pain, primarily in muscles, but sometimes in fascia, ligaments, areas of tendon insertions, and other areas of connective tissue.  The evaluation criteria require that the pain be widespread, and that the symptoms be assessed based on whether they are constant or episodic, or require continuous medication, but they are not based on evaluations of individual joints or other specific parts of the musculoskeletal system.") (internal citations omitted).  Much of the ALJ's rejection of plaintiff's claimed limitations is the alleged lack of foundation in "objective medical evidence."  This course has been repeatedly rejected in cases addressing the assessment of fibromyalgia.  The Sixth Circuit noted that "in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245 (6th Cir. 2007); *see also Canfield v. Comm'r of Soc. Sec.*, 2002 WL 31235758, *1 (E.D. Mich. 2002) (discussing how it is "nonsensical to discount a fibromyalgia patient's subjective complaints on the grounds that objective medical findings are lacking.").

Significantly, the ALJ, in commenting on plaintiff's credibility as it relates to pain symptoms, must follow the requirements of, among other provisions, 20 C.F.R. § 404.1529 as well as SSR 96-7p. Given that it is simply impossible for the ALJ to re-evaluate the treating physician evidence without evaluating plaintiff's pain and other credibility issues, the undersigned concludes that plaintiff's credibility must be re-assessed as well. *Laxton v. Astrue*, 2010 WL 925791, *6 (E.D. Tenn. 2010) ("[B]ecause of the subjective nature of fibromyalgia, the credibility of a claimant's testimony regarding her symptoms takes on substantially increased significance."); *see also Rogers*, 486 F.3d at 243 ("[G]iven the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important."); *Hayes v. Comm'r*, 2010 WL 723766, *9 (N.D. Ohio 2010) (The ALJ erred in using objective medical signs such as joint deformity, effusion, range of motion, reflexes, sensation, and muscle strength to determining whether a claimant's subjective assertions regarding pain were credible.). In light of the foregoing conclusions, the undersigned also suggests that the ALJ should re-assess plaintiff's credibility and subjective pain complaints in the context of her fibromyalgia.

2. Single decision-maker

Plaintiff correctly points out that part of the problem with the ALJ's analysis

and rejection of the treating physicians' opinions is the lack of any contrary
opinions or other expert opinions in the record as to plaintiff's physical
impairments or limitations.  In this case, the single-decision maker (SDM) model
was used pursuant to 20 C.F.R. § 404.906(b)(2).  This regulation provides
streamlined procedures as an experiment, in which State Agency disability
examiners may decide cases without documenting medical opinions from State
Agency medical consultants.  The "single decisionmaker model" was an
experimental modification of the disability determination process that happens to
have been used in Michigan.  *See Leverette v. Comm'r*, 2011 WL 4062380 (E.D.
Mich. 2011).  This experiment eliminated the reconsideration level of review and
allowed claims to go straight from initial denial to ALJ hearing.  *Id*.  Most
significantly, it allowed the state agency employee (the single decisionmaker) to
render the initial denial of benefits without documenting medical opinions from the
state agency medical consultants.  *Id*., citing 20 C.F.R. §§ 404.906(b)(2),
416.1406(b)(2).  The Programs Operations Manual System (POMS) requires it to
"be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC
assessment form] was completed by an SDM because SDM-completed forms are
not opinion evidence at the appeal levels."  POMS DI § 24510.05.  Plaintiff's
physical impairments were evaluated by an SDM, Anthony Longordo, who
concluded that her impairments were not severe.  (Dkt. 6-10, Pg ID 624).  Thus, no

medical opinion was obtained at this level of review, in accordance with this model.

While the ALJ did not rely on the opinion of the SDM, which would have been wholly improper, the lack of any medical opinion on the issue of equivalence is still an error requiring remand.  As set forth in *Stratton v. Astrue*, — F.Supp.2d —; 2012 WL 1852084, *11-12 (D. N.H. 2012), SSR 96-6p describes the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge ... is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, *longstanding policy requires that the judgment of a physician* (or psychologist) designated by the Commissioner *on the issue of equivalence on the evidence* before the administrative law judge ... *must be received into the record as expert opinion evidence and given appropriate weight*.

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a

determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b));

*Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. 2011) (warning that an

ALJ who makes a step-three equivalence determination without expert-opinion

evidence runs the risk of impermissibly playing doctor).

      The *Stratton* court further explains that SSR 96-6p treats equivalence

determinations differently from determinations as to whether an impairment meets

a listing, requiring expert evidence for the former, but not the latter.  *Id.* at *12;

citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic

principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to

determine whether a claimant's ailments meet the Listings, expert assistance is

crucial to an ALJ's determination of whether a claimant's ailments are equivalent

to the Listings.") (citation and quotation marks omitted).  This expert opinion

requirement can be satisfied by a signature on the Disability Determination

Transmittal Form.  *Stratton*, at *12, citing SSR 96-6p, 1996 WL 374180, at *3

(The expert-opinion evidence required by SSR 96-6p can take many forms,

including "[t]he signature of a State agency medical ... consultant on an SSA-831-

U5 (Disability Determination and Transmittal Form)."); *Field v. Barnhart*, 2006

WL 549305, at *3 (D. Me. 2006) ("The Record contains a Disability

Determination and Transmittal Form signed by Iver C. Nielson, M.D ....

discharging the commissioner's basic duty to obtain medical-expert advice

concerning the Listings question.").  There is no Disability Determination and Transmittal Form signed by a medical advisor as to plaintiff's physical impairments in this record.  (Dkt. 6-3, Pg ID 83).

The great weight of authority[1] holds that a record lacking any medical advisor opinion on equivalency requires a remand.  *Stratton*, at *13 (collecting cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none was in the record); *Wadsworth v. Astrue*, WL 2857326, at *7 (S.D. Ind. 2008) (holding that where record included no expert-opinion evidence on equivalence, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing").  While the government has argued in other cases that courts in this district have concluded that the ALJ need not obtain expert opinion evidence in cases involving an SDM, *see Gallagher v. Comm'r*, 2011 WL 3841632 (E.D. Mich. 2011) and *Timm v. Comm'r*, 2011 WL 846059 (E.D. Mich. 2011), the undersigned does not find these cases persuasive.  In both cases, the court concluded that because the regulations permitted an SDM to make disability determination without a medical consultant that the ALJ is, therefore,

---

[1] In *Stratton*, the court noted that a decision from Maine "stands alone" in determination that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence." *Id.*, citing *Goupil v. Barnhart*, 2003 WL 22466164, at *2 n. 3 (D. Me. 2003).

also permitted to do so where the "single decisionmaker" model is in use.  Nothing

about the SDM model changes the ALJ's obligations in the equivalency analysis.

*See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's

impairment equals a listing is a medical judgment, and an ALJ must consider an

expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of*

*Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a

medical expert is required before a determination of medical equivalence is

made.") (citing 20 C.F.R. § 416.926(b)).  Based on the foregoing, the undersigned

cannot conclude that the ALJ's obligation to consult a medical expert in making an

equivalency determination is any different in a case where the SDM model is used.

While the SDM is not required to obtain a medical opinion in cases involving

physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have

modified the ALJ's obligations and it makes little sense to conclude that the ALJ is

relieved from obtaining an expert medical opinion in SDM cases.  Thus, the

undersigned's analysis does not alter the SDM model, which leaves the SDM

discretion as to whether a medical expert is consulted as to physical impairments.

Rather, the undersigned's analysis leaves intact the requirements imposed on an

ALJ in making an equivalency determination, which does not otherwise appear to

be modified by the SDM model.  *See also*, *Maynard v. Comm'r*, 2012 WL

5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is

applicable, and requires a medical opinion on the issue of equivalence.").

While the undersigned is not necessarily convinced that plaintiff can show that her physical impairments satisfy the equivalence requirements, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [plaintiff]'s impairments ... in combination equal one of the Commissioner's listings." *Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D. Wash. 2012).  For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's physical impairments.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 14, 2013                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>March 14, 2013</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Eddy Pierre Pierre, Marc J. Shefman, Vanessa Miree Mays, AUSA, and the Commissioner of Social Security</u>.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov
